## LEVI HAPGOOD *vs.* AUGUSTUS BURT.

When one enters on land claiming title thereto, his seizin extends to the whole parcel to which he claims title. But

When one not claiming any right to land enters thereon, he acquires no seizin but by the ouster of him who was seized; and to constitute such an ouster, the disseizor must have the actual exclusive occupation of the land, claiming to hold it adverse to him who was seized; or he must actually turn him out of possession.

When a disseizor claims to be seized by virtue of his entry and occupation, his seizin cannot extend further than his actual exclusive occupation.

To constitute a disseizin of the owner of uncultivated lands by the entry and occupancy of one not claiming title, the possession must be of such notoriety that the owner may be presumed to know there is a possession adverse to his title.

This was an action of *ejectment,* for lands in Sheldon, in the county of Franklin; and the parties having agreed on three per-

FRANKLIN,
January,
1831.

Hapgood
vs.
Burt.

sons as referees, the county court by their rule referred the action to them to report thereon. The referees having fully heard the parties, reported, That "on trial, the plaintiff claimed the land described in his declaration by possession, and proved that in 1804 or 1805, he and others made coal on a piece of land then wild—parcel of lots no. 33, 38, and 57, which lots cornered together. The land thus claimed, by cutting off the timber for coal, amounting to twenty or thirty acres, and embracing part of lots no. 33, 38 and 57, was called the " back lot," and was enclosed by a ledge on part of one side, and by a log and brush fence on the other sides, as early as 1810. From 1810, till the defendant entered upon and took possession of that part of the " back lot," which is on lot no. 33, in 1825, the plaintiff occupied the " back lot" as a pasture, called it his " back lot," and occasionally, during all that period of time, repaired the fences around it. The defendant then produced the original charter of the town of Sheldon, by which it appeared that Philip Allen, sen., Philip Allen, jr., Elijah Allen, Richard Allen, John Allen, and Henry Allen, were original proprietors. He then produced a deed from Philip Allen, jr., Elijah Allen and Richard Allen, to Samuel B. Sheldon, dated September 8th, 1796, recorded in the town clerk's office, in said Sheldon, May 23, 1804, conveying all the right of the said Philip, Elijah and Richard, and purporting to convey all the right of the other Allens in and to the town of Sheldon, aforesaid. The defendant then read in evidence the probate records, by which it apeared that said Sheldon died in September, 1807 ; that the said lots nos. 33, 38 and 57, were inventoried as a part of his estate ; that his estate was represented insolvent ; that one Dyer had allowed him against Sheldon's estate by commissioners duly appointed thereon, a certain sum ; that Levi Hapgood, the plaintiff, James Herrick and John Haskins, were, on the 3rd day of June, 1811, duly appointed commissioners by the judge of probate, and sworn to set off lands of said Sheldon's estate to the creditors thereof, under a statute law of this state ; that on the 20th day of June, 1811, said commissioners duly set off to said Dyer, in satisfaction of his claim, a part of lot no. 33, and made returnd of their doings to the court of probate, who accepted the same on the 22nd day of June, 1811. In 1813, Bradley Barlow, claiming lot no. 38, as having been set off to him in satisfaction of a debt due to him from said Sheldon's estate, informed Samuel Weed, of Sheldon, that he, Weed, might pasture on the " back lot," and allow him what was right. Said Weed accordingly examined said lot,

FRANKLIN,
January
1832.

Hapgood
vs.
Burt.

and found it to be uninclosed, the fences being down, and in some places no fence at all. And said Weed called on the plaintiff who claimed a part of said "back lot," as belonging to his brother, Hutchins Hapgood, to whom lot no. 57 was set off in June, 1811, in satisfaction of a debt due to said Hutchins Hapgood from said Sheldon's estate. The plaintiff at this time pointed out to Weed the corner between Barlow and Hutchins Hapgood. Weed and plaintiff then together fenced in the whole of said "back lot," and pastured there together about four years, for which Weed settled with Barlow. In 1821, Barlow gave one Stephen Brock leave to pasture on the "back lot." Brock called on the plaintiff, who said he owned land adjoining, and that a pasture might be enclosed to accommodate both ; and in 1822, Brock pastured on the "back lot," and land adjoining, for which he paid Barlow. It also appeared from the testimony, that said Sheldon was in possession of part of lots 33 and 57, and had been, for several years previous to his death, claiming the whole lots ; that persons in his employ, in 1806, made coal on the "back lot," and that in 1807, one Eldridge in the employment, or under the direction of said Sheldon, grew grain on a part of the "back lot;" that the plaintiff from 1811, up to the commencement of this suit, claimed lot no. 57, as the property of his brother, and said he expected to buy it of him. It was also admitted, that the representatives of said Sheldon continued to possess lot no. 33, except that part of it which was set off to Dyer, as aforesaid ; and that the defendant had a regular conveyance from Dyer of his right, under which the defendant entered upon the land in question, in 1825. The plaintiff then produced a deed, executed and recorded from the said Sheldon to him of lot no. 37, describing it by metes and bounds, and called on the defendant to show a division of the town by the original proprietors ; but no division was shown. The plaintiff under his deed entered into possession of lot no. 37, and so continued."

" The plaintiff insisted, 1. That having a deed from an original proprietor of lot no. 37, and being in possession of the land in question at the time the defendant entered and took possession of it, he was entitled to recover, unless the defendant showed a division, and a paramount right. 2. That the acts of the plaintiff in setting off to Dyer could not affect his right by possession. 3. That his permitting Weed and Brock to occupy with him, did not change the character of his possession. 4. That if in possession, whether claiming the land as Hutchins Hapgood's, or as his own, he was entitled to recover against all but the rightful owner."

FRANKLIN,
January,
1832.

Hapgood
vs.
Burt.

" The defendant insisted, 1. That the plaintiff was not in adverse possession from 1804 to the time the land was set off. 2. That if he was, his acting as a commissioner, without setting up his claim at the time, was an abandonment of his possession. 3. That it was not necessary to show a division of the town by the original proprietors, inasmuch as the plaintiff's deed from Sheldon restrained his right to a particular lot, which, it is not pretended, included the lands in question. 4. That the plaintiff having claimed to be in possession of lot no. 57, as the agent of Hutchins Hapgood, the possession of the plaintiff was Hutchins Hapgood's, and would not enable the plaintiff to sustain the action of ejectment."

"From the facts aforesaid the referees decided, that the defendant was not guilty, and that he recover his costs." They added, " in their decision the referees intended to be guided by the law of the land."

This report was signed by the three referees, and returned into the county court in due season. To which report the plaintiff filed his exceptions : 1. Because the referees decided, that although the plaintiff was, at the commencement of his suit, and had been many years previously, in the actual possession and occupation of the land in question ; yet, as the plaintiff was acting as agent of Hutchins Hapgood, he could not sustain the action in his own name. 2. They also decided, that the plaintiff was estopped from holding or claiming the land in question, because he with two others had been appointed a commissioner to set off lands from the estate of Samuel B. Sheldon to creditors of said estate, and did in pursuance of said appointment, set off the land in question, in 1811, to said creditors, from whom the defendant claims to have derived his title. The county court, notwithstanding these exceptions, accepted the report of the referees, and rendered judgement, that the defendant was not guilty, and that he recover his costs. To this judgement the plaintiff filed his exceptions, which were now to be considered.

*Hunt, Beardsley and Sheldon, for plaintiff.*

*Brown and Burt, for defendant,* contended, That the plaintiff had not shown a title by the statute of limitations : 1. Because it does not appear, that the plaintiff was in the actual possession of any part of lot no. 33 until after 1810, and then it was not exclusive, but a mixed possession.—(5 *Pick. Rep.* 131 ; 10 *Mass. Rep.* 157, 408.) 2. Because the possession was not

FRANKLIN,
January,
1832.

Hapgood
vs.
Burt.

continued, the lands being common and uninclosed in 1813, when Weed and the plaintiff repaired the fences.—(*2 J. R.* 230.) 3. Because the possession was not attached with any claim of title to lot no. 33.—(*1 Mass. Rep.* 486 ; *2 Aik. Rep.* 155.) 4. Because the plaintiff was in possession of lot no. 57, claiming title as agent of Hutchins Hapgood ; and though he might have occupied a corner of lot no. 33, yet his possession should be limited by his claim of title. 5. The only evidence of any claim of title by the plaintiff was his calling the whole, his back lot ; and this should be taken to relate to lot no. 57, where the plaintiff had a right to be in possession, and not to lot no 33. 6. Because the plaintiff took, and continued in, possession of the lands in question as the agent of Hutchins Hapgood. Finally, if the plaintiff had possession of lot no. 33, at the time he set off the land in question to Dyer, as the property of Sheldon, this would be a waiver of his possession. The plaintiff had no claim of title upon record of which Dyer could be presumed to have notice ; his claim, if any, rested in parol ; and to permit the plaintiff to avail himself of such claim without any proof, that he gave Dyer notice at the time he set off the land, would be to permit the plaintiff to profit by a gross fraud. The lands in question had been inventoried as belonging to Sheldon's estate. The plaintiff as commissioner on said estate appraised and set off the land as belonging to said estate to Dyer, in satisfaction of his debt. This is evidence that the plaintiff acknowledged the title of Sheldon as against himself. If the plaintiff was in possession of the land at the time, the presumption is, that he was not in possession adversely to Sheldon or his representatives, but as their tenant.—(*1 Chip. Rep.* 48, 49.)

BAYLIES, J., *delivered the opinion of the Court.*—The correctness of the decision of the court below depends upon the facts, which were reported by the referees, and the law to be applied to those facts. It is not every possession of lands for fifteen years, that will give the tenant a title to such lands. Much depends on the character of the possession. To constitute a title, the possession should conform to the law, which is well expressed by *Parsons, Ch. J.,* in the case of "*The proprietors of the Kenebeck Purchase* vs. *John Springer,* (*4 Mass. Rep.* 416.) He says, "When a man enters on the land claiming a right or title to the same, and acquires a seizin by his entry, his seizin shall extend to the whole parcel, to which he had right ; for in this case an entry on part is an entry on the whole. When a man not claiming any right or

FRANKLIN,
January,
1832.

Hapgood
vs.
Burt.

title to the land shall enter on it, he acquires no seizin, but by the ouster of him who was seized, and he is himself a desseizor.  To constitute an ouster of him who was seized, the disseizor must have the actual exclusive occupation of the land, claiming to hold it against him who was seized, or he must actually turn him out of possession.  When a disseizor claims to be seized by his entry and occupation, his seizin cannot extend further than his actual exclusive occupation ; for no further can the party disseized be considered as ousted : for the acts of the wrong doer must be construed strictly, when he claims a benefit from his own wrong."

" To constitute a disseizin of the owner of uncultivated lands, by the entry and occupation of a party not claiming title to the land, the occupation must be of that nature and notoriety, that the owner may be presumed to know that there is a possession of the land adverse to his title : otherwise, a man may be disseized without his knowledge, and the statute of limitations may run against him, while he has no ground to believe, that his seizin has been interrupted."

Fifteen years uninterrupted wrongful possession, with actual notorious occupation, claiming the land as his own, whether at first the entry of the tenant was with, or without colour of title, tolls the entry of the rightful owner, and, by our statute of limitations, is a bar to any possessory action which the owner can bring.

The report of the referees states, that the plaintiff and others in 1804, or 1805, cut timber, and made coal on the land in question. Probably this was a mere trespass upon the freehold ; or it was done by the licence, or for the benefit of the owner of the land, and cannot be considered as the beginning of a title by possession. The report also says, "that from 1810, till the defendant entered upon, and took possession, of that part of the 'back lot' which is on lot no. 33, in 1825, the plaintiff occupied the 'back lot' as a pasture, called it his 'back lot,' and occasionally, during all that period of time, repaired the fences around it."  But this does not show, that the plaintiff was in possession of the land in question, fifteen years before the defendant's entry.  To determine the length of time, it is necessary to know the month in which the plaintiff made his fence, and the month in which the defendant entered.  If the plaintiff made his fence in December, 1810, and the defendant entered in January, 1825, the plaintiff's possession fell short of fifteen years.  It was for the plaintiff to have proved, that he possessed the land in question, adversely, for fifteen full years—and it should appear to be a continued, and un-

interrupted possession; not an occasional improving the land one
year, and not occupying the next.  It also appears, that the plain-
tiff claimed to hold lot no. 57 for his brother, Hutchins Hapgood,
and occupied the back lot, so called, five years in common with
the tenants of Bradley Barlow, who claimed lot no. 38.  And
there are several other facts disclosed, which have a bearing
against the plaintiff's supposed title.  From all the facts in the
case, it was for the referees to decide, whether the plaintiff show-
ed a legal title to the land in question, by adverse possession.  If
his possession was short of fifteen years, although it was prior to
the defendant's entry, it could not avail the plaintiff, if the defen-
dant was the rightful owner.  It does not appear from the report,
how the referees decided the several questions of law, which were
raised by counsel in argument.  But, in coming to their final de-
cision, they say, they intended to be guided by the law of the
land.  This Court will not presume that they departed from this
rule.

The judgement of the county court
is affirmed with additional costs.