HON. JAMES BARRETT,
HON. HOMER E. ROYCE,  } ASSISTANT JUDGES.
HON. TIMOTHY P. REDFIELD,

---

JOSEPH ATKINSON *v.* RICHARD PATTERSON.

*Presumption of Satisfaction or Bar of Mortgage by Lapse of Time. Color of Title. Claim of Title. Disseisin. Maintaining of Trespass by Tenant in Common.*

Where the mortgagor and his assigns had held, possessed, and enjoyed the mortgaged estate for more than seventy years, and no claim under the mortgage had been set up, it was *held,* that it would be presumed that the mortgage claim had been satisfied and the right extinguished, or that the mortgage had become barred by lapse of time, in analogy to the statute of limitations.

And the assignment of such mortgage by the grantee of the mortgagor, as attorney of the administrator of the mortgagee, to one to whom the equity of redemption was at the same time conveyed by such grantee, although no power of attorney be shown or recorded, tends, as evidence, to favor the presumption of satisfaction by lapse of time, in connection with the fact that no claim had ever been set up under the mortgage.

The record of deeds and levies of executions that do not name, or profess to cover, a certain lot, does not tend to indicate any title or claim to such lot under such deeds and levies.

The record of a *survey* of lands, does not, of itself, constitute *color* of title to such lands; but it may be evidence tending to show claim of title; and the fact of such survey and record, would be proper for consideration in a suit against the person by whose procurement the same were made, as bearing upon the character of acts subsequently done upon the land by such person, or by his authority.

But one who enters upon such lands, standing upon no rights derived from the person procuring such survey and record, cannot shelter himself thereunder.

When one takes possession o˙ land, and does acts thereon in the nature of a disseisin, on behalf of, and claiming for, another, such possession and claim are his principal's, and not his; and he cannot avail himself thereof in order to make himself the disseisor, when sued in trespass for acts subsequently done upon the land by him, on his own behalf, claiming for himself.

The owner of an original proprietor's right in undivided lands, may recover for trespasses committed thereon by a stranger.

TRESPASS for cutting trees and timber and peeling bark on the westerly half of hundred-acre lot No. 73 in Newbury, that half thereof being wild and unimproved land.   Trial by jury, December term, 1871, PECK, J., presiding.

The plaintiff introduced in evidence the original charter of said town, granted by the governor of New York, dated the 19th of March, 1772, in which, among other things, it appeared that Jacob Bailey and twenty-four others were the grantees of said township.   It was conceded by counsel on both sides, that the town of Newbury was chartered by the governor of the province of New Hampshire prior to the New York charter, and that the charter from New York was obtained, to confirm the rights of the grantees under the New Hampshire charter; that both charters were to the same persons, and that the New York charter did not disturb what had been done under the New Hampshire charter.

The plaintiff also introduced in evidence a certified copy of the record in the town clerk's office of said Newbury, of a mortgage deed from said Bailey to Henry Higginson, dated October 17, 1789, and recorded the 21st of said October, whereby lot No. 73, "in the division of hu dred-acre lots laid out by the proprietors in said Newbury," and other lands, were mortgaged to the said Higginson, to secure the said Bailey's bond for 1004 *l.* 9 *d.* Also, a like copy of a quit-claim deed, or deed of release, from said Bailey and his wife to John Lowell, Jr., one of the heirs of the said Higginson, dated October 16, 1792, and recorded the same day, conveying, with other lands, all the land conveyed by said mortgage, and all the said Jacob's right, title, interest, and equity of redemption therein.   Also, a like copy of the assign-

ment of said bond and mortgage, from Stephen Higginson, administrator of the estate of the said Henry Higginson, by the said Lowell, his attorney, to Josiah Little, dated February 25, 1796, and recorded August 15, 1809. Also, a like copy of a deed from the said Lowell to the said Little, dated the said 25th day of February, and recorded the said 15th day of August, of all the land conveyed to said Lowell by the said Bailey and wife as aforesaid. Also, a like copy of a deed from said Little to Stephen Bennett, dated May 20, 1829, and recorded December 2, 1839, conveying " fifty acres of the hundred-acre lot No. 73, to be taken from the easterly end of said lot, by line parallel to the end line of said lot." The copy of this deed was introduced to show that said Little claimed to own lot 73, and exercised ownership thereof, and also to identify said lot. It appeared that soon after said Bennett took his said deed, he entered upon the said fifty acres, on 1 cleared the same, and surveyed it out agreeably to his deed, a u that the same has been used for farming purposes ever since, by the said Bennett and his grantees, and that prior to Bennett's entering on said fifty acres, the whole of lot No. 73 was wild. The plaintiff also gave evidence, that said Little paid taxes on the whole lot, after he took his deed as aforesaid, until he sold said fifty acres to Bennett, and that after that, he paid on the remainder of the lot as long as he lived. It also appeared that said Little died intestate about the year 1831, at Newburyport, Mass., where he always lived ; that at the time of his death, he had lands in Newbury other than the lot in question, both wild and improved ; that after his death, his heirs divided his lands in Newbury, and elsewhere, among themselves, by deed of partition. The plaintiff introduced in evidence the original deed of partition, dated March 16, 1832, and recorded May 12, 1832. It appeared by the plaintiff's evidence, in connection with said deed, that the land in question was set and conveyed in and by said deed, to Mary L. Hale and Anna Atkinson, wife of William Atkinson, deceased, to each one undivided half, as tenants in common ; that the said Anna was the mother of the plaintiff, and died in Newbury about the year 1866, and that she made a will, which was duly probated in the probate court of the district of Bradford.

The plaintiff introduced in evidence a certified copy of the record and probate of said will, whereby it appeared that said will was probated on the 18th of February, 1867, and that Charles Atkinson and the plaintiff were the executors thereof, and that letters testamentary were issued to them on the day last aforesaid, and that the plaintiff was the residuary legatee and devisee of said Anna. It also appeared that the plaintiff had paid all the legacies under said will, and claimed one undivided half of the land in question as such residuary legatee and devisee. The plaintiff gave in evidence a deed from Mary L. Hale to himself, dated February 21, 1854, and recorded March 25, 1854, conveying, among other lands, the said Mary's undivided part of the land in question. The plaintiff also gave evidence, that after the death of said Josiah Little, his estate paid the taxes on lot 73 until the estate was divided by said deed of partition ; that the taxes on said lot were assessed to, and paid by, the said Mary L. Hale and William Atkinson, and Anna his wife, until the said Mary deeded her share to the plaintiff, and until the death of the said William and Anna, and that since that time they had been paid by the plaintiff to the present time. It was admitted by the defendant in his testimony, that in the year 1856, he looked after and took care of lot 73, for the plaintiff, and that in January of that year, the plaintiff told him that he understood that one Fleming was cutting timber on land adjoining said lot, and requested the defendant to see that Fleming did not cut over the line on to said lot, which the defendant did, and in pursuance thereof showed Fleming the line of said lot, and told him not to cut over the line, as said lot was the plaintiff's.

It also appeared by the plaintiff's testimony, and the defendant admitted on trial, that the defendant, during the time he had charge of the land in question for the plaintiff, notified the plaintiff that some one had cut a pine tree on said lot ; that the plaintiff requested the defendant to ascertain if the tree was cut within the boundary line of said lot, and the defendant did so, and informed the plaintiff that it was, and that one Gilman cut it. The defendant also admitted, that he cut the trees and timber, and peeled the bark, on said land, as alleged in the declaration. It

did not appear how much he cut in 1868; but in 1869, he admitted that he cut sixty or seventy trees, and got two or three cords of bark. The trespasses were alleged to have been committed on the first day of May, 1868, and on divers other days and times between that day and the commencement of the suit—December 9, 1869.

It also appeared that the land had been surveyed and allotted prior to the execution of said deed from Jacob Bailey to Henry Higginson. The evidence also tended to show, that the plaintiff never knew of the defendant's cutting any wood or timber upon the land in question, or claiming any interest therein or title thereto, in himself, or doing any acts upon said lot, except to look after it for the plaintiff, until about September, 1869, after all of the trespasses complained of, were committed, when he heard of the defendant's cutting the timber complained of in this suit; and there was no testimony to the contrary. The testimony of the plaintiff and the defendant, and of Alonzo Fleming and Ephraim Fleming, given on the trial, was referred to and made part of the case; but it is not deemed necessary to state the same.

The plaintiff claimed that the book of proprietors' records of said town, introduced by the defendant, tended to show that the same had been altered and changed in material parts, and that the same, with said alterations, tended to show that lot 73 was originally drawn to the right of said Jacob Bailey. It did not appear that said lot 73 was ever drawn to the right of any person or persons other than Jacob Bailey, or that any other proprietor of said town, or any person claiming under any proprietor's right, ever claimed to own said lot, except Jacob Bailey and his grantees, unless there is something in the testimony above referred to that has that tendency, which relates mainly or entirely to a claim to undivided lands.

The plaintiff requested the court to charge the jury, among other things, that from the lapse of time, a grant from the other proprietors of said town to Jacob Bailey, would be presumed.

The plaintiff's testimony tended to show that the defendant proposed to purchase the *locus in quo* of the plaintiff, upon several different occasions from 1860 to 1864.

The defendant claimed, and testified on trial, that in 1861, one Thomas R. Holt, of Connecticut, claimed to own lot No. 73, and that the defendant, as the agent of said Holt, some time during that year, took possession of said lot, and cleared a small piece on the south-westerly part thereof, tapped some maple trees thereon, and cut and drew away fire-wood therefrom; that he continued to enlarge his clearing on said lot, from year to year, and to cut poles and wood, and to sugar, as the agent of said Holt, until about the end of 1866,—all which possession of the defendant, the plaintiff denied. The defendant, for the purpose of showing that the said Holt had color of title to said lot, offered in evidence a certified copy of a deed from Frederick W. Boardman, executor of the last will of Daniel Boardman, to Thomas R. Holt, dated November 22, 1836, and recorded in the town clerk's office in said Newbury, August 27, 1838, and purporting to convey in said Newbury, " the undivided lands belonging to the rights of Ephraim Bailey, Ephraim Noyes, Jeremiah Allen, John Baird, Joshua Copp, Abraham Sawyer, Moses Little, Daniel Appleton, William Temple, and William Hayward, each thirty-four acres, and containing together 340 acres, be the same more or less." To the admission of which the plaintiff objected, for the reason, among others, that it did not purport to convey lot No. 73. Objection overruled, *pro forma,* and the deed admitted; to which the plaintiff excepted.

The defendant also offered in evidence, to show color of title in said Holt to said lot, a certified copy of a deed from Thomas Leverett, collector of a United States tax, to Daniel Boardman, dated November 1st, 1819, and recorded in the town clerk's office of said Newbury, on the 29th of said November, purporting to convey in said Newbury, " thirty-four acres undivided on the following rights, viz: [naming all the rights last aforesaid, except that of William Hayward], thirty-four acres each of the above rights;" to which said deed the plaintiff objected, that it did not purport to convey lot 73, and that said Leverett was not authorized by law to execute the same. Objections overruled, *pro forma,* and the deed admitted; to which the plaintiff excepted.

The defendant also offered in evidence, to show color of title

of said lot in said Holt, a copy of a deed from Isaac Bailey, collector of a land-tax, to said Daniel Boardman, dated April 14, 1824, and recorded the 17th of said April, purporting to convey in said Newbury, " the undivided shares, containing thirty-four acres each, to wit, Jeremiah Allen, Ephraim Bailey, John Baird, Joshua Copp, Abner Sawyer, Moses Little, Daniel Appleton, William Temple, and also three acres of the undivided share of Ephraim Noyes." To the admission of which the plaintiff objected. Objection overruled, *pro forma*, and the deed admitted ; to which the plaintiff excepted.

The defendant also offered in evidence an original notice, dated March 20, 1867, signed by Thomas R. Holt by the defendant as agent, whereby the said Holt gave notice that he claimed title in law and equity to the lands advertised to be sold that day by the plaintiff, designated as lot No. 97 and part of lot No. 73, also the land south of the county road in said Newbury, and warned all intending purchasers of said lands, to give due heed to said notice, and govern themselves accordingly, as he should maintain and defend said title against all strangers thereto. The defendant testified that he read said notice aloud at the auction, in presence of the plaintiff and his auctioneer, and others, and then told the plaintiff that he had levied an execution in his favor against Holt, on the land in question, but should deed it back to Holt when Holt paid him.

The defendant also introduced evidence tending to show, that sometime in the latter part of 1866, he took possession of lot 73, claiming to own the same, and from year to year since, had extended his clearing on said lot, cut fence-poles, made maple sugar, and cut and took away wood therefrom, and that he had improved and pastured the land so cleared on said lot, being about four or five acres, from the year 1866 up to the present time ; that at some time about the year 1866, or before, he built a hedge or brush fence on said lot, enclosing about twelve or fifteen acres of the south-west corner thereof, and including the clearing above referred to ; all of which acts of the defendant were denied by the plaintiff's counsel. It appeared that all the acts of the defendant upon said lot since 1861, were upon and within the twelve or fifteen

acres enclosed by the hedge-fence as aforesaid, except a part of the trees cut by the defendant as alleged in the declaration.

The defendant also offered in evidence for the purpose of showing color of title of said lot in himself, a certified copy of an execution in his favor against Thomas R. Holt, dated November 15, 1865, with the officer's return thereon, showing the levy thereof upon the undivided lands belonging to the original rights of Ephraim Bailey, Ephraim Noyes, Jeremiah Allen, John Beard, Joshua Copp, Abner Sawyer, Moses Little, Daniel Appleton, William Temple, and William Hayward, thirty-four acres each, and a set-off of 433 undivided 850ths thereof, in satisfaction of said execution ; to the admission of which the plaintiff objected, because it did not purport to levy upon lot No. 73, and for other objections apparent on the face thereof. Objections overruled, *pro forma*, and the same admitted ; to which plaintiff excepted. The defendant also offered in evidence a copy of an execution in his favor against said Holt, dated November 26, 1866, with the officer's return thereon, showing a set-off of the remaining 417 undivided 850ths of the lands last above mentioned ; to the admission of which the plaintiff objected, because the levy and set-off did not purport to extend to lot No. 73, and for other defects and objections apparent upon the face thereof. The court overruled said objections, *pro forma*, and admitted the same. The defendant testified that he claimed the *locus in quo* in his own right, after his levies, and from about the end of 1866.

It was not claimed that the defendant had been in possession of the *locus in quo* fifteen years. It apeared that on the 28th of November, 1865, the defendant surveyed the *locus in quo*, and other lands in said Newbury, for the said Holt, and that said survey was recorded in the town clerk's office the 25th of March, 1867.

The counsel on both sides stated that there were various questions of law they wished to raise ; and the plaintiff's counsel stated that he wished to go to the jury on various questions, and had requests to make to the court ; but the court informed counsel, that for the purpose of having all the questions decided by the supreme court, the court would rule, *pro forma*, that the plaintiff could not recover, and leave the plaintiff to except, with liberty

to. raise any question in the supreme court that could be raised on the evidence in the county court, and that if there was any question on which the plaintiff had a right to go to the jury, he would have the benefit of it in the supreme court as a ground of a reversal of the judgment; and with that view, the court, *pro forma*, directed a verdict for the defendant. The plaintiff excepted to the said several rulings and decisions of the court.

*Leslie & Rogers*, for the plaintiff.

I.   As to the plaintiff's title to the *locus in quo*. The plaintiff proved that Jacob Bailey and twenty-four others, were the original grantees of the town of Newbury, by letters-patent from the governor of New York, dated 19th March, 1772. The plaintiff then showed an unbroken chain of title to the lot in question, from said Bailey down through various persons to himself, and proved that prior to the executing of the first deed by said Bailey (October 17, 1789), the lot in question had been surveyed and lotted out as hundred-acre lot No. 73, and that said lot was by said Bailey deeded and conveyed by that description. It did not appear that lot 73 was ever drawn to the right of any person other than said Bailey, or that any other proprietor, or any person claiming under any other proprietor, ever claimed to own said lot, except said Bailey and his grantees. The exceptions add, " Unless there is something in the testimony referred to that has that tendency, which relates mainly or entirely to a claim to undivided land." We insist and claim that there was no testimony given in the case, which shows that said lot remained as *undivided* lands; but the case shows by the testimony referred to, that the undivided lands referred to were thirty-four-acre rights, or lots, and that the land in question was a hundred-acre lot, and had been divided and lotted. Nor was it shown, or any testimony given to show, that any part of said undivided lands— thirty-four-acre rights—was ever located on hundred-acre lots, and especially on the lot in question, by the proprietors of said town, or any other person having authority to do so. And if the defendant claims title upon the ground that this lot is *undivided* land, he must show it, and the burden of proof is on him, the

plaintiff having proved it to have been surveyed, lotted, and numbered as a hundred-acre lot, before 1789 ; and this is strong evidence tending to show that the lot was not, and is not, undivided land. The fact also that said Bailey, a grantee of said town, as early as 1789, deeded the lot by its number, and as a hundred-acre lot, by deed of warranty, and no other proprietor, or person claiming under such proprietor or any proprietary right, ever claimed said lot, or title to it, or found any fault that said Bailey had deeded it, is strong evidence that said Bailey had the proper title to, and owned, said land. No one has ever questioned said Bailey's right to said land, or his right to deed it, till this suit. It should be presumed from these facts, and lapse of time, that Bailey had a deed and title. 2 N. H. 31. If this is a question of fact, we have a right to raise it in this court, as the case is made up. The plaintiff has a right to recover, even if Jacob Bailey had only an interest as a grantee of the town, as the defendant and Holt are strangers to the title. 2 Vt. 318. We suppose it to be settled, that one tenant in common can maintain ejectment or trespass against a stranger, and recover for himself and co-tenants to the full extent of the injury. The taking actual *prior* possession by Little and the plaintiff, as appears by the case they did, under their deeds, gives them possession of the whole lot, and gives the plaintiff a right to recover against the defendant, as he shows *no title in himself or Holt ;* they are *strangers and trespassers. Sawyer* v. *Newland,* 9 Vt. 383 ; *McGrady* v. *Miller et al.* 14 Vt. 128 ; *Cutting* v. *Cox,* 19 Vt. 517 ; *Hughes* v. *Graves,* 39 Vt. 359.

II. As to the possession of the plaintiff, and those under whom he claims title. Title by deed, or grant, gives constructive possession, especially to wild lands. Josiah Little and those claiming under him, have always, since he took his deeds in 1796 of the land in question, to the present time, paid the taxes on this lot, which shows a claim to own it under their deeds. And as early as 1829, said Little, claiming said lot by his deeds, sold and deeded fifty acres off of the east end of it to one Bennett, and immediately entered on it and surveyed off said fifty acres, which was soon cleared up, and has been used for farming purposes ever

since. This, we claim, was a taking possession of the whole lot under his deeds, and enures to the plaintiff's benefit.

The case also shows that the plaintiff took *actual prior* possession of the land in question, under his deeds and bequests, for himself and those under whom he claims, and that the defendant acted for him, and took charge and care of it as his agent, fully and completely recognizing the plaintiff's right and title to it.

III. The defendant and Holt are strangers to the title. Neither of them shows or has any title, valid or otherwise. Neither of the deeds or executions and levies, conveys, or in any manner describes or refers to, the land in dispute, and they are wholly insufficient for any such purpose. The defendant did not offer them in evidence for that purpose, but only to show color of title. There was no evidence to prove that Holt *himself* ever *claimed* to own the land.

IV. As to the defendant's color of title ; none of the deeds offered by the defendant for this purpose, were admissible, because none of them pretend or purport to cover, convey, or in any way refer to, the land in question. Nor were either of the executions admissible for the purpose of showing color of title.

We insist that in order to make a paper *give color of title*, and be admissible for that purpose, it must contain some description of, and reference to, the land to which claim is made by virtue of such color of title. *Hodges* v. *Eddy*, 38 Vt. 327.

The notice of March 20, 1867, admitted for the purpose of showing color of title, was not admissible for that purpose, or any other purpose.

A *survey* of land which has been *recorded*, is only evidence of a claim of title, but not an act of possession, nor evidence of title. *Kidder* v. *Kennedy*, 43 Vt. 717 ; *Oatman* v. *Fowler*, Ib. 462.

V. The defendant claims that he has disseised the plaintiff. We admit that it has been decided in this state, that in the action of trespass, the defendant must be in actual or constructive possession of the land at the time of the committing of the trespasses complained of, and bringing suit. In other words, if plaintiff has been actually disseised, he cannot recover in trespass for any act

except the first entry or ouster, unless he re-enters before action brought; and then he can recover for all the acts, for the law supposes him to have been in possession all the while. *Cutting* v. *Cox, supra ;* and such was the opinion of the majority of judges in *Stevens* v. *Hollister,* 18 Vt. 294. But we insist that it is not every act, or series of acts, of trespass, that will amount to an ouster and disseisin—much depends upon the character of the acts.

We have already seen that defendant and Holt had *no title or color of title,* but were strangers to the title, and that plaintiff *had the title, and was the owner, and had taken actual prior possession.* There is no disseisin in this case. *Hapgood* v. *Burt,* 4 Vt. 155; *Prop. of Kennebec* v. *Call,* 1 Mass. 483; *Lund* v. *Parker,* 3 N. H. 49; *Hale* v. *Glidden,* 10 N. H. 397.

VI. We claim that the plaintiff in any event has the right to recover for what the defendant cut outside of the brush-fence ; that no ouster can be claimed, except so far as the defendant has actually occupied. His acts are to be construed strictly. When a man enters on the land of another without any title, or pretence of title, he is entitled to no presumption in his favor; and more especially cannot an ouster be presumed, when the owner of land had no knowledge of the pretended ouster. *Hapgood* v. *Burt, Lund* v. *Parker, Hale* v. *Glidden, supra.* Little and the plaintiff having actual prior possession under deeds covering the lot, which gives them constructive possession to the whole lot, the defendant cannot claim by a subsequent conflicting constructive possession beyond his actual adverse possession. *Riley* v. *Jameson,* 3 N. H. 23 ; *Crowell* v. *Beebe,* 10 Vt. 33 ; *Ralph* v. *Burley,* 11 Vt. 521 ; *Hodges* v. *Eddy, supra.*

VII. The plaintiff had the right to go to the jury upon various questions of fact which the testimony tended to prove, viz : whether the lot was undivided lands ; where the undivided lands lie and are situated ; also, upon the question of Jacob Bailey's right and title ; and in this connection, as to whether title in him should not, under the circumstances and from lapse of time, be presumed, as was distinctly claimed by counsel on trial; also, whether or not the land was drawn to the right of Jacob Bailey ;

97

and as to the question of ouster, and the extent of it ; and as to whether the notice of the 20th of March was given by Holt's direction ; whether it was read in the plaintiff's hearing, &c. ; and whether the defendant ever was Holt's agent, and if so, to what extent.

*Orin Gambell, Jr.,* and *C. W. Clarke,* for the defendant.

In regard to the questions raised on the bill of exceptions, we say that the plaintiff cannot maintain his action of trespass. We claim that at the time when the plaintiff's suit was commenced, and the injury complained of was committed, the plaintiff was not in possession of the *locus in quo.* The gist of the action of trespass *quare clausum fregit,* is the injury to the possession ; and unless the plaintiff, at the time the injury was committed, was in the actual possession of the premises, the action cannot be maintained. *Campbell* v. *Arnold,* 1 Johns. 511 ; *Stuyvesant* v. *Tompkins et al.* 9 Johns. 61 ; *Wheeler* v. *Hotchkiss,* 10 Conn. 225 ; *Toby* v. *Reed,* 9 Conn. 216 ; *Bakersfield Cong'l Society* v. *Baker & Potter,* 15 Vt. 119 ; *Ripley* v. *Yule et al.* 16 Vt. 257 ; 1 Chit. Pl. 175. The portion of lot No. 73 upon which the trespass is claimed to have been committed, was wild and unimproved land, and the plaintiff had never occupied it, nor done any act of possession upon it, unless the paying of taxes, &c., can be so claimed. On the other hand, the defendant had for several years been in possession of this lot ; had cut timber, made sugar, peeled bark, cleared a few acres, and enclosed his clearing with a fence. Not only was the defendant thus in possession at the time of the committing of the alleged trespasses, but he claimed to hold the premises in question by virtue of a title either in himself or his principal. The possession of the defendant was open and notorious, and must have been known to the plaintiff long before the injury complained of. The defendant was not only in possession adversely to the plaintiff at the time of the committing the alleged trespasses, but during all the time of his possession, he or his principal held and claimed title in and to lot No. 73.

The deeds and executions introduced by the defendant, however defective and powerless in themselves to convey to Holt or Pat-

terson a valid title to the *locus in quo* as against the plaintiff, are still sufficient to give to the defendant or his principal, a color of title, which, coupled with an adverse possession by the defendant or his principal, will prevent the plaintiff from sustaining an action of trespass against the defendant.

The possession will be adverse, if had and continued under the claim and color of title, however groundless the supposed title proves to be. 2 Washb. Real. Prop. 507, *et seq.; Grant* v. *Fowler*, 39 N. H. 101 ; *Farrar* v. *Fessenden*, Ib. 268.

Color of title means a deed or survey of the land, placed upon the public records of land title, whereby notice is given to the true owner, that the occupant claims title. *Hodges* v. *Eddy, supra*.

We claim that, from all that appears in the case, lot No. 73 is a portion of the undivided lands in the town of Newbury, and that the deed to Holt, and the defendant's executions against Holt, describing the land conveyed as undivided lands, are sufficiently exact in their description, so that the court should hold that they will establish a color of title. The fact that the defendant, in 1856, looked after the plaintiff's interest in this lot, and even made a survey of the same, or any part of it, cannot be of avail to the plaintiff in this action, for it is not claimed that any of these acts of defendant were done after the defendant entered into possession of lot 73 for Holt in 1861.

A tax deed which is void by reason of fatal defects in the proceedings of the collector, being upon record, gives character to such acts as those claiming under such deed may do upon the land. *Wing, admr.* v. *Hall & Darling*, 44 Vt. 118. The plaintiff stands upon his naked title of record, while the defendant is in actual possession under title which, though it may be defective, is still sufficient to give character to his acts while claiming under that title. The plaintiff, relying alone upon his naked title, must show a perfect chain of title, in order to maintain any action of any kind against one in possession. The deed from Stephen Higginson to Josiah Little, is by John Lowell, Jr., attorney for said Higginson. The power of attorney from Higginson to Lowell, in no way appears in the case ; nor does it appear to have ever been recorded in the town clerk's office in Newbury. No deed or other

conveyance of any lands, or of any estate or interest therein, made by virtue of a power of attorney, shall be of any effect, or admissible in evidence, unless such power of attorney shall have been signed, sealed, attested, and acknowledged, and recorded in the office where such deed shall be required to be recorded. Gen. Sts. ch. 65, § 24. The power must accompany the grant upon the records, in order to connect the grant with the grantor; and without this, the grantee is invested with no title or authority over the land. *Oatman et al.* v. *Fowler*, 43 Vt. 462. This defect has in no way been cured by the plaintiff or his grantors, for they have never at any time been in possession. This deed, it is true, is not the only one given to Josiah Little. It appears in the first place, that Jacob Bailey gave a mortgage deed to Henry Higginson, and afterwards quit-claimed his equity of redemption to John Lowell, Jr., one of the heirs of Henry Higginson; but it seems to us that for all this, the deed of the interest of Henry Higginson, by virtue of this mortgage deed, is necessary to complete the plaintiff's chain of title.

No grant from the other proprietors to Jacob Bailey can be presumed from lapse of time. *State* v. *Trask*, 6 Vt. 355.

Lot No. 73 never appears to have been drawn to the right of any one of the original proprietors, or of any one else; but has remained a part of the undivided lands in the town of Newbury.

The opinion of the court was delivered by

BARRETT, J. It does not seem needful, in view of the manner in which the case was disposed of in the county court, to elaborate the propositions of law upon which our conclusions are based. From what is presented to us, it seems plain that the lot in question was, in fact, divided and allotted in the original division and allotment of the town; and so, in no sense, does it come within the designation of *undivided lands*. The evidence tended to show, and it was sufficient to warrant the jury in finding conclusively, that it was allotted to the right of Jacob Bailey, one of the original proprietors. Unless this is conceded by the defendant, the matter should be submitted to the jury, under instructions conformable to what is above indicated. A perfect chain of pa-

per title was shown from Jacob Bailey to the plaintiff. The mortgage to Higginson does not interrupt the continuity of the chain. The evidence is sufficient to show that the mortgage interest had been in fact extinguished. As the title of Jacob Bailey, subject to the mortgage, was conveyed by him to Lowell, who, and his heirs, have ever since held the title, it would be presumed, after such a lapse of time, and no claim under the mortgage having been set up, that the mortgage claim had been satisfied, and the right extinguished, or that the mortgage had become ineffectual by bar, in analogy to the statute of limitations. 4 Kent Com. 189. The assignment of it to Little by the administrator of the mortgagee, by said Lowell as attorney, though his power of attorney is not shown, nor was recorded, tends, as evidence, to favor the presumption of satisfaction resulting from lapse of time, in connection with the fact that no claim has ever been set up under it. No *color* of title was shown by the defendant. The deeds and levies of execution introduced by him, do not name nor profess to cover the lot in question. The record of them, therefore, did not tend to indicate any title or claim to said lot. The levy made by the defendant did not, in fact, embrace lot No. 73, and so not only does it not constitute *color*, but does not, as an act of the defendant, tend to show *claim of title* by him.

Nothing is shown tending to give Holt title, or *color* of title, to the lot. The survey made by the defendant in November, 1865, and recorded January 15, 1867, if done by the procurement or authorization of Holt, would not, of itself, constitute *color* of title; but might be evidence tending to show that he was claiming title. If Holt was doing, or was procuring acts to be done on the lot at the time of and after said survey, the fact of said survey and record, if made by his procurement, would be proper for consideration in a suit against him, as bearing on the character of his acts on the lot, whether they were trespasses or were acts of possession. If Holt did not authorize said survey and record, then they would go for nothing. If he did not authorize the acts done by the defendant on the lot, then they would go for nothing, as touching any right of himself in reference to the lot. If he did authorize the survey and the recording of it, and the acts of the

defendant, they are of no avail to the defendant in this suit, because the defendant does not get any *color* of title, or stand on any rights in this lot derived from Holt.

The case standing, then, without any *color* of title in Holt, and with evidence tending only to show that Holt, through the agency of the defendant, was making claim of ownership, and the defendant himself showing that he was acting as Holt's agent as to lot No. 73, down to March 20, 1867, and with no evidence tending to show *color* of title at all at any time in himself, or that he was claiming title to said lot in his own right till after said notice of March 20, 1867, it would seem that the character of the acts of the defendant on the land, must depend on what he did and claimed in his own right after his professed agency for Holt had ceased. And, on the question whether he was claiming title and right while doing said acts, his offering to buy the plaintiff's interest, would be for the consideration of the jury, under proper instructions. He is defending this action of trespass, not only on the ground that the plaintiff has not title, but also, and equally, on the ground that, if he has such title, the defendant was in possession at the time this suit was brought, as *disseisor* of the plaintiff. What had been done while the defendant was acting as the agent of Holt, in the nature of a *disseisin*, would render Holt, and *not* the defendant, the *disseisor*. The possession and claim, whatever they may have been, were the possession and claim of Holt, and not of the defendant. Any possession and claim of which the defendant is entitled to avail himself in defence of this suit, can only be what he shall prove to have been made by himself, in his own name and right, after he ceased' to be acting in the name, and as the professed agent, of Holt. The legal consequences of acts done under claim of right, on the one hand, or not under such claim, on the other, are sufficiently indicated by numerous cases, of which it suffices to refer to *Doolittle* v. *Linsley*, 2 Aik. 155, and the comments of Judge PECK on that case, in *Kidder* v. *Kennedy et als.* 43 Vt. 729, and to the case of *Hapgood* v. *Burt*, 4 Vt. 155, in which the case of *Props. of Kennebec* v. *Springer*, is cited, and the language of Ch. J. PARSONS, in delivering the opinion, is quoted.

Upon the evidence, the plaintiff would be entitled to recover in this action, for the original entry by the defendant, and for all cuttings of trees by him outside of the alleged enclosure ; and, unless the jury should find that the defendant had *disseised* the plaintiff, and was in possession as *disseisor* at the time this suit was brought, of the part of the lot within said pretended enclosure, the plaintiff would be entitled to recover for all trespasses by the defendant, covered by the declaration.

As Jacob Bailey was one of the original proprietors, if lot No. 73 was not allotted to him as such proprietor, in severalty, he was holding as tenant in common, and the plaintiff, standing in his right, may recover for trespasses committed by a stranger. No opinion is expressed on the point made as to the sale and conveyance to Bennett of the east half of the lot, and the possession thereof by him and his assigns.

Judgment reversed, and cause remanded.